WILLIAM J. COUGHLIN ET AL., PROSECUTORS. v. LEO S. SULLIVAN, JUDGE, ETC., RESPONDENT.

Argued June 21, 1924—Decided September 29, 1924.

The enactment of an ordinance regulating or prohibiting the distribution of circulars, pamphlets and other advertising matter in such manner as will ordinarily result in the littering of streets, or other public places, constitutes a valid exercise of the police power, under the "general welfare clause," and does not contravene constitutional provisions; but the distribution of pamphlets containing matter of public interest is not likely to result in the evil sought to be prevented by such an ordinance, and a conviction for this act is unduly oppressive and will be set aside.

On *certiorari.*

For the prosecutors, *Warren, Britt & Stanton.*

For the respondent, *Thomas J. Brogan.*

The opinion of the court was delivered by

MINTURN, J. The writ in this case reviews the conviction of the prosecutors in the First Criminal Court in Jersey City for violation of an ordinance prohibiting the distribution of circulars, pamphlets, &c., in the public streets.

The prosecutors were members of an organization of citizens incorporated under the name of "Faithful Government Forces," which organization published the pamphlet distributed.

The record shows that the pamphlets, which criticised the municipal administration, were all distributed in stores save one pamphlet, given to a pedestrian.

The enactment of reasonable ordinances regulating or prohibiting the distribution of circulars, pamphlets and other advertising matter, in such manner as will ordinarily result in the littering of streets or other public places, constitutes a valid exercise of the police power under the "general wel-

fare clause," and does not contravene constitutional provisions.

It is a matter of common knowledge, of which the court will take judicial notice, that certain circulars, pamphlets, &c., especially such as advertise commercial or business enterprises, when indiscriminately distributed to pedestrians, having no desire or use for them, are cast away so as to litter the streets. The natural and ordinary result of the distribution of such circulars being to litter the streets, an ordinance prohibiting their distribution is adapted to and reasonably necessary to prevent such evil. The principle is elucidated in *Harwood* v. *Trembley,* 97 *N. J. L.* 173.

The pamphlet here in question is of a different nature, containing, as it does, the views of a number of citizens as to the management or alleged mismanagement of municipal affairs, a matter in which they, as well as all other citizens, are vitally concerned. It cannot be presumed, in the absence of evidence, that the recipients of such pamphlets would throw them away. As to such pamphlets, containing matter of public interest, the ordinance operates unreasonably in this respect beyond the occasion of its enactment, and is unduly oppressive.

The record shows that only one pamphlet was handed to a person on the public streets. Considering the mischief to be prevented, and the express language of the ordinance, it is evident that a distribution to the public generally, or to considerable numbers of people is intended, and not a handing to only one or two persons. Under any other interpretation there could exist no real evil to be prevented.

Evidence was admitted over objection, showing a distribution in stores. This evidence should not have been admitted as stores are not public places within the ordinance. *Pamoplas* v. *Marinos,* 98 *N. J. L.* 665.

Even were it otherwise, the prohibition of such distribution in stores would be unwarranted and unreasonable, having no relation whatever to the evil aimed at, and in no way tending to accomplish the prevention of the littering of the streets.

A New York City ordinance provides, "no person shall throw, cast or distribute, any handbill, circular, card or *other advertising matter* whatsoever, in or upon any street or public place," &c.

The defendants were convicted of violation of the above ordinance, in handing out circulars in front of a theatre where a moving picture exalting the activities of the Ku Klux Klan was being exhibited. The circular distributed bore the announcement that it was published by the "National Association for the Advancement of Colored People," and defendants were acting as agents.

It was held that the ordinance was never intended to prevent the lawful distribution of anything other than commercial and business advertising matter, and the circular in question did not come within that category. The court observes:

"It would be a dangerous and un-American thing to sustain an interpretation of a city ordinance which would prohibit the free distribution by a body of citizens of a pamphlet setting forth their views against what they believed to be a movement subversive of their rights as citizens.

"The constitution of the State of New York provides that 'every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right, and no law shall be passed to restrain or abridge the liberty of speech or of the press.'

"The primary purpose of the ordinance was to prevent the littering of streets with commercial advertising * * *.

"The ordinance within reasonable limits is a proper one, and should be sustained, but no ordinance, no matter how worthy its intendment, should be permitted in any way to curtail any of the fundamental rights of the citizens.

"The circular in question was a protest against what was believed to be a movement which encouraged discrimination against certain classes of citizens because of race, color or religious beliefs, and, whether or not there was a sound basis for that belief, they were within their rights in making public their protest against such a movement, and to make known

their protest they use possibly the only means available by the distribution of circulars and pamphlets to the public." *People* v. *Johnson* (1921), 191 *N. Y. Supp.* 750.

These views seem to be illustrative of the general principle which should govern cases upon the constitutional guarantee of free speech in so far as that right can be reconciled with the general police power of the municipality to preserve law and order in the administration of municipal affairs. This view of the situation results in setting aside the conviction. Such will be the rule.